**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1479-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CLAUDE L. WALLACE,

     Defendant-Appellant.

_____

Argued November 29, 2021 – Decided December 13, 2021

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 17-06-0425 and 17-06-0426.

Robert Carter Pierce argued the cause for appellant.

Milton S. Leibowitz, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County Prosecutor, attorney; Milton S. Liebowitz, of counsel and on the brief).

PER CURIAM

After the trial court denied his motion to suppress a firearm police seized from him during a traffic stop, defendant Claude L. Wallace pled guilty to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1). The trial court sentenced him to a five-year custodial term, subject to a forty-two-month parole ineligibility period.

Pursuant to Rule 3:5-7(d), defendant appeals the suppression denial. He argues that under search-and-seizure case law, the police were not entitled to seize the handgun without a warrant in the circumstances presented. As a related argument, defendant asserts the trial court erred in disallowing him from calling an additional police officer as a witness at the suppression hearing. We affirm.

I.

The following facts germane to these issues emerged at the suppression hearing.

On February 1, 2017, defendant was driving his Nissan Murano and ran a red light at the intersection of Lincoln Drive and Boulevard in Kenilworth. He was pulled over by Sergeant Michael Scanielo of the Kenilworth Police Department. Before approaching defendant's car, Sergeant Scanielo searched a computer database and learned that defendant's vehicle registration was expired.

The sergeant walked to the passenger side door of defendant's car and spent four to five minutes speaking with him.[1] According to the sergeant's testimony, he told defendant he smelled "raw marijuana," and defendant responded his girlfriend had smoked marijuana in the car earlier. The sergeant told defendant the smell gave him probable cause to conduct a search of the car.

The sergeant walked around the back of the car to get to the driver's side. As described by the sergeant, defendant then reached into the center console of his vehicle, grabbed an "object," then opened the door and fled. The sergeant and Patrolman Ryan Kernan, who was also at the scene, ran after defendant, tackled him, and apprehended him. During a search of defendant's person and the immediate area, the officers recovered and seized a Ruger LCP .380 caliber handgun.

A subsequent inventory search of the car at the roadside by Officer Matthew Torre uncovered in the center console a closed plastic cannister

---

[1] Much of the sequence of events was filmed from a police "dash-cam" mobile video recorder, which was provided to the trial court before the suppression hearing. At our request, appellate counsel supplied this video exhibit and we have viewed it as part of our consideration of the issues.

A-1479-20

containing four small bags of marijuana.[2] The canister was eventually lost while in police custody.

Defendant was thereafter charged with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); fourth-degree prohibited weapons and devices, N.J.S.A. 2C:39-3(f)(2); and third-degree resisting arrest and eluding an officer, N.J.S.A. 2C:29-2(a)(2).

Defendant moved to suppress the gun, arguing that the police's warrantless seizure of that evidence violated both the Fourth Amendment of the United States Constitution as well as the New Jersey Constitution. Although he did not contest the legality of the initial traffic stop, defendant argued the police had no probable cause to search the car, and that it was improper for the sergeant to tell him he had the grounds to conduct such a search. As part of that argument, defendant contended it was physically impossible for the sergeant to have smelled raw marijuana emanating from the car, because the only marijuana

---

[2] The video includes about four seconds of footage in which Officer Torre appears to be carrying the plastic container out of the car and walking away with it. The confiscation of the container is also noted in Officer Torre's supplemental investigation report, which was part of the submissions to the motion judge. See State v. Bacome, 440. N.J. Super. 228, 239-40 (App. Div. 2015), rev'd on other grounds, 228 N.J. 94 (2017) (allowing hearsay evidence to be considered by the court in connection with pretrial admissibility hearings); see also Manata v. Pereira, 436 N.J. Super. 330, 345 (App. Div. 2014) (applying the hearsay exceptions for business records and public records to police reports).

present was packed away in the closed plastic container in the console. Defendant further argued the police unreasonably prolonged the traffic stop and thereby infringed unduly on his freedom of movement.[3]

The State, in turn, argued that probable cause was supported by the sergeant's testimony recounting the "plain smell" of marijuana when he approached the car. Moreover, regardless of whether probable cause of a marijuana offense existed, defendant had no right to flee from the car, let alone while carrying a handgun. Because of that unauthorized flight during a motor vehicle stop, the police had the authority to apprehend defendant and to search his person incident to that arrest. The State further asserted the police, upon arresting defendant, were justified in searching the interior of the car pursuant to State v. Witt, 223 N.J. 409, 447-48 (2015).

The motion judge considered the testimony of Sergeant Scanielo at the suppression hearing and found his account to be credible. In his oral opinion dated January 21, 2020, the judge concluded that the sergeant's smelling of marijuana constituted probable cause to permit him to conduct a search of the car, but that defendant's flight prevented him from being able to do so. The

---

[3] Responding to an argument made by defendant's trial counsel, the judge found no racial issue of consequence in the case.

A-1479-20

judge found "there was no search conducted [] until after Mr. Wallace ran from his vehicle, was apprehended, and found with a gun" and that the defense's argument would be stronger if Wallace had "remained in the – in the car and [the officers] then searched the vehicle and found the marijuana and then he [ran]."

The motion judge declined to allow defendant to call Officer Torre as a witness at the hearing. Defendant proffered that Officer Torre would corroborate that an odor of marijuana could not have been detected through the what his counsel characterized as an "air-tight" plastic container, and therefore the sergeant's assertion that he smelled marijuana was untruthful. The judge discerned no need for Officer Torre's testimony, noting the court already had his written report describing how the marijuana was packaged when he discovered it in defendant's car. In addition, the judge had the sergeant's testimony providing an alternative source of the marijuana odor, i.e., defendant's statement that his girlfriend had smoked marijuana in the car at an earlier time.

After losing the suppression motion, defendant entered into a plea agreement with the State admitting his guilt of the second-degree weapons offense. The remaining charges were dismissed pursuant to the agreement. The

sentence imposed by the court was consistent with the plea agreement, and it is not challenged on appeal.

On appeal, defendant presents the following arguments in his brief:

POINT I:

THE TRIAL COURT DEPRIVED MR. WALLACE OF HIS DUE PROCESS AND COMPULSORY PROCESS CONSTITUTIONAL RIGHTS BY ORDERING THAT MR. WALLACE WAS PROHIBITED FROM CALLING OFFICER TORRE AS A DEFENSE WITNESS AT THE SUPPRESSION HEARING, WHO WOULD HAVE PRESENTED EVIDENCE AND TESTIMONY THAT THE PLAIN SMELL EXCEPTION TO THE WARRANT REQUIREMENT WAS NOT APPLICABLE.

POINT II:

THE TRIAL COURT ERRED BY RULING THAT THE STATE HAD MET THEIR BURDEN OF PROOF THAT THE "SEARCH INCIDENT TO ARREST" EXCEPTION TO THE WARRANT REQUIREMENT WAS ESTABLISHED.

In considering these arguments on appeal, we adhere to well settled principles. We must sustain a trial court's factual findings from a suppression hearing, so long as they are supported by sufficient credible evidence in the record. State v. Nelson, 237 N.J. 540, 551 (2019). That said, a trial court's

7

interpretation of the law and the legal "consequences that flow from established facts" are reviewed de novo. State v. Gamble, 218 N.J. 412, 425 (2014).

Analytically, the first issue to address is whether the recovery of the gun incidental to defendant's arrest after fleeing from the car stop was constitutional, regardless of any events that preceded it. It is well established that law enforcement officials may conduct a warrantless search of a person incident to that person's arrest if there was probable cause to arrest that person before the search. See Chimel v. California, 395 U.S. 752, 762-63 (1969). Probable cause to arrest exists when the totality of the facts and circumstances presented to the arresting officer would support "a [person] of reasonable caution in the belief that an offense has been or is being committed." State v. Sims, 75 N.J. 337, 354 (1978) (quoting Draper v. United States, 358 U.S. 307, 313 (1959)).

In this case, the police witnessed defendant flee from a concededly lawful motor vehicle stop before it was duly completed. Even if a person thinks, and a court later concludes, that police officers have no right to detain or search the driver, the law prohibits the driver from disregarding the police fleeing from the officers before, while, or after the officers complete their investigatory functions. See, e.g., State v. Williams, 192 N.J. 1, 11-13 (2007) (discussing the obstructing administration of law statute, N.J.S.A. 2C:29-1); State v. Crawley,

187 N.J. 443, 460-62 (2006) (same); State v. Seymour, 289 N.J. Super. 80, 87 (App. Div. 1996) (discussing the resisting arrest and eluding an officer statute, N.J.S.A. 2C:29-2).

An officer's first-hand observation of a criminal act constitutes probable cause for the purposes of arresting the offender. See Maryland v. Pringle, 540 U.S. 366, 371-72 (2003); State v. O'Neal, 190 N.J. 601, 613 (2007). Because the officers in this case witnessed defendant violate numerous statutes by fleeing from the roadside stop, they had probable cause to arrest defendant and perform a search incident to the arrest.

A search incident to arrest cannot exceed the arrestee's person and the area "within his immediate control." Chimel, 395 U.S. at 763. Here, the gun was recovered from underneath defendant after he was tackled to the ground, clearly "within his area of immediate control" from which he could possibly use it against the officers. This is the precise justification for the search incident to arrest rule. Id. at 762-63. For these reasons, the search incident to arrest which resulted in the confiscation of the gun was manifestly constitutional.

Defendant argues the events that preceded his arrest were unconstitutional and thereby tainted the constitutionality of the events that followed. To be sure, an otherwise-constitutional arrest or recovery of evidence may, at times, be

deemed unconstitutional if it is preceded by constitutional violations.  See, e.g., State v. Chisum, 236 N.J. 530, 551 (2019); State v. Rodriguez, 172 N.J. 117, 132-33 (2002).  The arrest may be invalidated and the evidence may be suppressed, unless one of the exceptions to the exclusionary rule applies.  State v. Badessa, 185 N.J. 303, 311 (2005) (referencing Wong Sun v. United States, 371 U.S. 471, 485 (1963)).

As we have noted, defendant fled from what began as a constitutional stop, based on the sergeant's reasonable suspicion that he had committed a traffic violation.  State v. Carty, 170 N.J. 632, 647, modified on other grounds, 174 N.J. 351 (2002).

Defendant further argues the police unconstitutionally prolonged the motor vehicle stop by conversing with him for a period of less than five minutes. We are unpersuaded that such a brief passage of time amounted to an unreasonable restriction on his freedom of movement.  The police were entitled to take at least that modest amount of time to investigate defendant's driving and expired license violations before issuing him the corresponding traffic tickets.

It is clear such reasonable suspicion existed and the stop was valid.  Even so, defendant contends the sergeant's alleged detection of the odor of marijuana coming from the car, during the course of that valid stop, was patently false.

Consequently, he argues the sergeant's proclamation that he had a right to search the car based on the "plain smell" of marijuana was pretextual, thereby making the ensuing search of his person unconstitutional.

As of the time this motor vehicle stop occurred in 2017, a police officer's detection of the "plain smell" of marijuana could suffice to furnish probable cause to conduct a warrantless search of a motor vehicle. See, e.g., State v. Nishina, 175 N.J. 502, 515-17 (2003). Since that time, the Legislature has substantially curtailed that justification, in a statute that became effective on February 22, 2021.[4]

In any event, we need not resolve for purposes of the constitutional analysis whether the sergeant could, or could not have, smelled marijuana emanating from the car. That is because the illegal flight of defendant from the scene broke the chain of events and attenuated any alleged police impropriety.

---

[4] The smell of marijuana is no longer deemed sufficient to constitute reasonable articulable suspicion of a crime, except in limited circumstances. N.J.S.A. 2C:35-10(c). In 2021, Governor Murphy signed into law the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, which, among other things, partially legalized the "possessing" and "transporting" of small quantities of cannabis. N.J.S.A. 2C:35-10(a). Under the new statute, the smell of marijuana alone will not be sufficient grounds for a police officer to search a civilian's motor vehicle. N.J.S.A. 2C:35-10(c). However, the statute's effective date in 2021 was years after the 2017 search in this case, and defendant has not argued it applies retroactively here.

One of the recognized exceptions to the exclusionary rule is the attenuation doctrine. That doctrine applies when a certain (often momentous) event occurs, or a long period of time passes, between the constitutional violation and the recovery of the evidence, so as to conclude the "taint" of the constitutional violation has dissipated. See State v. Herrerra, 211 N.J. 308, 330-38 (2012).

To determine whether evidence is "attenuated" for the purpose of introducing it against a defendant, courts must consider: "(1) the temporal proximity between the illegal conduct and the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the [alleged] police misconduct." Id. at 331 (quoting State v. Johnson, 118 N.J. 639, 653 (1990)).

A defendant's attack upon or flight from a law enforcement officer constitutes an intervening circumstance that can make alleged earlier constitutional violations sufficiently attenuated from the recovery of the challenged evidence. See, e.g., id. at 336-37 (deeming defendant's violent attack upon a police officer who pulled him over and ordered him out of the car an intervening circumstance that dissipated the taint of any possible illegality of the original stop); Williams, 192 N.J. at 10 (finding defendant's resistance and

flight from an officer after he was stopped on the street purged the taint of any unconstitutional stop, and attenuated the post-flight recovery of a gun on his person).

Defendant's sudden flight from the police, who had yet to complete his motor vehicle stop and issue traffic tickets, was a quintessential superseding event for the purposes of the attenuation doctrine. It severed the link between any alleged preceding unconstitutional conduct and the later recovery of the gun during the search incident to arrest.

Although the temporal proximity of the events was certainly close, the abrupt flight of defendant—armed with a handgun that could have harmed the officers—was a momentous, intervening circumstance that satisfies the attenuation doctrine. In addition, we are unpersuaded that the alleged impossibility that the sergeant could have smelled marijuana—even if it had been proven, contrary to the trial judge's factual findings—was sufficiently flagrant to delegitimatize the officer's pursuit and apprehension of the fleeing defendant and the confiscation of his weapon. We also note that the key focus of the motion in this case was to suppress the gun rather than the marijuana found in the car.

A-1479-20

We do not take lightly defendant's concern that he may have been the object of racial stereotyping, and take note of his brief's generic allusion to "nationwide civil unrest over police-community relations." But the record in this case, at least as it was developed in the trial court, lacks an adequate evidential basis and particularized findings to compel relief on those exceptional grounds.[5]

In sum, the officers' warrantless seizure of defendant's handgun under the circumstances presented here was constitutional. We affirm the trial court's decision, albeit for slightly different reasons than the judge articulated. See El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 169 (App. Div. 2005) (noting "that a correct result, even if predicated on an erroneous basis in fact or in law, will not be overturned on appeal").

---

[5] We do, however, repudiate the suggestion made by the State at oral argument that it can be constitutionally acceptable for a police officer to deliberately lie to a motorist to effectuate a warrantless search of the motorist or his vehicle. Although case law under the Fifth Amendment self-incrimination doctrine tolerates some degree of deception during the course of a police interrogation, see State v. L.H., 239 N.J. 22, 44 (2019), we are aware of no comparable authority under Fourth Amendment search-and-seizure jurisprudence, and counsel cited none. Nor do we adopt defendant's argument in his brief that the sergeant was obligated to provide him with Miranda warnings when they were conversing through the car window; defendant was not at that point in custody, but instead was the subject of an ongoing motor vehicle stop. Miranda v. Arizona, 384 U.S. 436, 444 (1966) (specifying warnings required for "custodial" police interrogations).

As a final matter, given the foregoing analysis, we are not convinced the trial court deprived defendant of due process or abused its discretion in declining to have Officer Torre called to the witness stand. His anticipated testimony about the container found in the console would have had only limited relevance. It would not refute the legitimacy of the other officers' apprehension of defendant once he chose to run from the scene. The judge already had Officer Torre's police report describing the cannister, albeit without commenting on its smell, if any, as well as video footage. The court had the discretion to curtail testimony that would be, in essence, largely, if not entirely, cumulative of that report. N.J.R.E. 403.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION